The court now calls agenda number two, case number 113817, People of the State of Illinois v. Antonio Almond. Are the parties ready to proceed? You may proceed. Good morning, Your Honors. I am Assistant Cook County State's Attorney Mary Needham, and I represent the people of the state of Illinois. May it please the court. This case presents a straightforward question, and that is, when the legislature amended the UUW by a felon statute to state that the possession of each firearm or firearm ammunition constitutes a single and separate offense, did it mean to authorize multiple convictions for a felon? Our position is the answer to this question is yes. The legislature amended this provision just months after this court decided People v. Carter. Carter presented similar facts in that a felon in that case possessed multiple firearms that were loaded and also an unloaded firearm and firearm ammunition. He was charged and convicted with multiple counts of UUW by a felon. This court noted in Carter that in contrast to the UUW statute, the Controlled Substances Act included explicit, expressed language authorizing that the possession of more than one controlled substance constituted single and   separate violations. This court held that that language expressly authorized multiple convictions and also demonstrated that the legislature was aware and knew how to designate multiple convictions. Ms. Needham, although it isn't the case here, I'm curious. The statute says the possession of each firearm or firearm ammunition in violation of this section constitutes a single and separate violation, right? That's correct. If a felon is caught with a box containing 50 rounds of ammunition, is that one offense or 50? Depending on how he's charged, it could be 50, yes. So it depends really on how the state decides to charge the case? That's correct. But they could go the 50 route? Correct. Okay. So the language that this court endorsed in Carter, that applies here for the UUW statute. The language is clear. The legislature was plain and they clearly meant to punish felons who possess loaded firearms by providing that those possessions are two offenses and that the possession of a loaded firearm by a felon is not the equivalent of possessing an unloaded firearm or just firearm ammunition. Here, the people treated defendant's conduct separately. The conviction for armed habitual criminal is based on defendant's possession of a firearm and his conviction for UUW by a felon was specifically charged with possession of a firearm ammunition. Am I correct if these charges run, these convictions run concurrently? Yes, that is correct. The without a doubt, the evidence overwhelmingly established the defendant possessed a loaded firearm and was guilty of two separate offenses. Therefore, the appellate court's ruling that one act one crime rule was implicated in this case is just erroneous. Defendants possession, defendant committed two different violations of the law as designated by the legislature and even if there was, even if the one act one crime rule was implicated, it doesn't apply here because we have, we do not have convictions based on precisely the same physical act. We have convictions based on possessions of two separate and distinct items of contraband. For these reasons and the reasons in our brief, we ask that this court reinstate defendant's conviction for UUW by a felon. Before you sit down, in your reply brief you talk about Nunez, right? The Nunez case. And I'm a little confused on that because that holding seems to rely on just the specific statutory language providing for multiple penalties and not on one act one crime. Well, correct and it's our position that there is no one act one crime. It's just not implicated here because as in Nunez, the legislature has designated that driving in that case while under the influence and driving without a license while two, well there's one act of driving is two separate offenses. And here the legislature has said yes you have possession of a firearm and its ammunition inside it and that is also two separate offenses. Right, but my question goes to does Nunez support your position or not? I believe it supports our position that there's no one act one crime violation. Okay. Thank you. Good morning, may it please the court, counsel. My name is Ginger Odom from the Office of the State Appellate Defender and I represent the appellee Antonio Almond. I'd like to begin by addressing the question that you just asked about Nunez. Nunez's parties conceded that the act of driving was one act of driving and then on appeal in this court the state then took the separate, a different position that it was two separate acts. But this court looked at the driving while license revoked statute and that statute explicitly allowed for there to be a separate driving while license revoked conviction and an aggravated DUI conviction. So in that instance the legislature abrogated the one act one crime, one act one crime king rule by specifically allowing for two convictions for the single act of driving. So in that case Nunez actually supports our position because what our argument is that the Carter Amendment did not allow for separate convictions under separate statutes. Now the state argues that there are two separate acts and that therefore two separate convictions one for UUW by felon and one for armed habitual criminal for the possession of a single loaded firearm can stand. But the state is wrong. In the first instance possession of a loaded firearm is a single physical act as contemplated by King and Crespo. Secondly the amended UUW by felon statute does not address possession explicitly of a single loaded firearm which is what the appellate court determined here that the unit of prosecution was not specifically delineated. And third the language of the amendment itself as I just explained limits its application to multiple convictions for UUW by a felon. So maybe you can have multiple convictions by UUW by felon but here we don't have multiple convictions for UUW by felon. Instead we have multiple convictions one for UUW by felon and one armed habitual criminal. So if the legislature had followed the Nunez example and allowed for separate convictions under separate statutes then the state's argument would be correct. But that is not what the legislature did. As you pointed out your honor the statute amendment says, let me see, the possession of each firearm or firearm ammunition in violation of this phrase referring only to the UUW by felon statute. It doesn't say any other section or this act. Now the Manning amendment got it right. It allowed for separate convictions under separate statutes because the legislature expressly allowed for that by stating a violation of this act constitutes a single and separate violation of this act. So by it abrogated the one act one crime consideration by sweeping the entire scope of the Controlled Substances Act under its under its scope. Whereas the Carter amendment only allows only allows for multiple convictions of UUW by felon which is simply not the case here. Here the Mr. Allman stands convicted of two separate statutes for the single act of unholding a single loaded firearm. Now you made the example about holding a box containing 50 rounds. In that example if you're holding a box that has 50 rounds you're doing a single act. You're holding a box and that is why this the act of holding a single loaded weapon does not does not constitutes two separate physical acts as the state contends. And in fact the state doesn't explain why that would be only why in this case they're only two ammunition in the gun. So for these reasons we ask that you affirm the appellate court's holding that there can only be one act. However this court needn't even reach that question because the seizure of Allman was a violation of his Fourth Amendment rights as we argued in our request for for cross relief. Now there are any there are two parts to any Fourth Amendment inquiry. Was there a seizure and was there reasonable suspicion? The appellate court answered both these questions. The appellate court was right this was a seizure but the appellate court was wrong in deciding that there was reasonable suspicion for this seizure. The state claims that there was no seizure but a reasonable person in Antonio Allman's position would not have felt free to terminate the encounter with Officer Davis. As the appellate court correctly found in paragraph 67 of its of its decision and I'm paraphrasing, the officers arrived in a marked squad car and parked immediately in front of where Allman was standing on the sidewalk. The officers got out of their marked squad car wearing bulletproof law enforcement vests. They chose to pursue Allman instead of the other individuals standing on the sidewalk who walked away in opposite directions as soon as the police car pulled up. The officers pursued Allman from the street to the confined inside of a very small store. And Officer Davis stood in front of Allman in the back of the store with his back to the wall and thus physically blocked any further movement by Mr. Allman and immediately and without any preliminaries demanded to know why Allman was in the store and whether he had guns or drugs on him. The state argues that this was a consensual encounter but a consensual encounter necessarily contemplates the opportunity to consent. Here the officer did not give Antonio Allman an opportunity to consent. When Officer Davis began his interrogation by asking Allman why he was in the store and whether he had guns or drugs on him, any reasonable person in Allman's shoes would not have felt free to terminate that encounter. Bless you. This was a seizure. While the court found that this was a seizure, the court was wrong in its determination that the officer had reasonable suspicion. Now I'd like you to note that the appellate court in paragraph 68 analogized this case to Illinois v. Wardlow and found that there were two points, there were two errors in the appellate court's analogy to Wardlow. One, the appellate court found that this was a high drug trafficking area and two, the appellate court found flight. As to high drug trafficking area, there was no evidence offered at the motion to suppress or at trial that this area was a high drug trafficking area. Instead, Officer Davis testified that he was responding to a citizen complaint. So that was not transformed into evidence that this was a high drug trafficking area. And secondly, there was no testimony at trial or at the motion to suppress about flight and certainly not headlong flight like the court was contemplating in Illinois v. Wardlow. Davis said that Allman walked into the store. In fact, Davis said on cross-examination that Allman was doing nothing suspicious when he followed him to the store and began his questioning. Here, what the police were armed with at the time that they approached Antonio Allman was a citizen complaint, an anonymous citizen complaint, that several black men were selling drugs on a corner on Chicago's South Side, a black neighborhood. And that is why this case is on all fours with Florida v. JL. In JL, in fact, the police were armed with even more information than the officers had here because in JL the officers knew the age range of the young black man and they knew what he was wearing. They knew it was a young black man at a bus stop wearing a plaid shirt. Here, by contrast, the officers were only looking for several black men. They didn't have a clothing description. They didn't have an age range or a hairstyle or complexion. They didn't have any, at least half of the information that the officers had in Florida v. JL. And notably, again, Officer Davis said that Allman was doing nothing suspicious before Davis began his interrogation. In this case, the salient issue is the illegal seizure. Where Allman's Fourth Amendment rights were violated, we ask for reversal of all his convictions. If, however, this court determines that the trial court was properly denied the motion to suppress, then we ask that this court affirm the appellate court holding that only one conviction may stand for this loaded gun. Thank you. Ms. Odom? Yes, sir. Back to the appeal itself, how do you address the appellate court decisions that have held or have indicated that it's absurd to punish the criminal who has the ammunition outside the gun more harshly than the criminal who has the ammunition inside the gun? I think that this court was, I mean, I understand that and that was a concern that this court faced in Manning, but the legislation is what the legislation is. This court can only follow that legislation. Furthermore, in this specific case, there's not a lesser punishment for having a loaded gun because in this case, Mr. Allman was convicted of armed habitual criminal, which is a higher class offense. It's a class X offense and he had to serve 85% of his term. So he's not getting off scot-free. The equities are not what they may be in a case where a defendant is only charged with one sort of class 2 offense. And as a note, Mr. Allman has already served his term and is out on MSR. Are there any other questions? Okay, thank you. Thank you. As to defendant's conviction for armed habitual criminal, no ammunition is loaded. So for that reason, the two convictions are completely proper and it does punish an offender more when they carry away two convictions, despite the fact that there might be a conviction on an offense that carries a longer sentence. The legislature has also designated that same language, single and separate violations, in the other firearm statute. But UUW by felon is the only statute that prescribes a felon from carrying ammunition. As to defendant's claim regarding a Fourth Amendment violation, the trial court reached the proper conclusion. The trial court heard two diametrically opposed versions of what happened and he believed the officers. The officers testified that, I would just first like to discuss some of the evidence that the appellate court relied on that was just not contained in the record. There was no evidence whatsoever of a seizure. We had officers whose supervisor or desk personnel asked them to go investigate drug sales out of a liquor or little food store. And the officers complied with their supervisor's order and went to investigate. And that is all they did. There was no evidence whatsoever that the police put their car in front of the store. There was no evidence that any officer pushed or blocked defendant up against the wall. What the officer testified to was that he approached defendant and on cross-examination he was asked, well where was the defendant standing? The defendant was standing at the back of the store with his back to the wall. That's a much different version than what the appellate court construed the facts. The officer merely approached defendant and engaged in a The officers were not dressed in uniform. They did not display their guns. They didn't give any orders. They didn't say stop. They walked in to conduct a field interview. One officer spoke to defendant while the other officer spoke to two other gentlemen. There was no show of force. The officer said, what are you doing here? The defendant said he was buying chips. When the officer observed that, the defendant seemed to be at the back of the store. He said, do you have any drugs or weapons? And defendant volunteered. There was no tone. No one testified to any tone of voice. Just a conversation. No seizure. In fact, defendant was going to show the police officer his gun. In this situation, the trial court found there was no terrorist act. There was no seizure. That was the correct finding because defendant, according to the voluntary conversation, he answered simple questions. That's why this case is not on all fours with J.L. where there was a description and the officers went immediately and apprehended people. The officers did not make any moves to apprehend anybody or stop anyone until defendant notified the officer that he possessed a gun and offered to give it to the officer. For these reasons and reasons in our brief, we ask that you affirm the trial court's ruling that this was a consensual encounter, that no seizure occurred, and affirm defendant's convictions for armed habitual criminal and unlawful use of a weapon by a felon. Thank you. Thank you. Case number 113817, People of the State of Illinois v. Antonio Almond, will be taken under advisement as agenda number two. Ms. Needham, Ms. Odom, thank you for your arguments today. You're excused at this time.